

IN THE CIRCUIT COURT OF MILLER COUNTY, ARKANSAS



| | | |
|---|---|---|
| JOE NEAL OLIVER | § | |
| Individually and as Class Representatives | § | |
| on Behalf of All Similarly Situated Persons, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| vs. | § | No.: |
| | § | CV. 2010 · 644-1 |
| MONA VIE, INC. | § | |
| MONA VIE, L.L.C. | § | |
| | § | |
| DEFENDANTS | § | |

---

## PLAINTIFF'S CLASS ACTION COMPLAINT

---

COME NOW the Plaintiff, Joe Neal Oliver, individually and as class representatives on behalf of all similarly situated individual residents of the state of Arkansas, and files this Class Action Complaint against the Defendants listed above in the style of this action ("Defendants").

### INTRODUCTION AND NATURE OF CASE

1.     The Mona Vie juice scam is the newest creation of noted multi-level marketing scheme architect, and prior "super juice" creator, Dallin Larsen, after his last venture was halted by the Food and Drug Administration because of false and misleading advertising.  Much like Larsen's last "super juice" creation, Mona Vie is marketed and sold to vulnerable consumers at an outrageously inflated price because Defendants and their "independent distributors" create false hopes for preventing and treating illnesses by generating false and misleading advertisements and claims about the health benefits of drinking Mona Vie juice.   Defendants and their

"independent distributors" are engaged in a conspiracy to unjustly enrich themselves to the maximum extent possible at the expense of consumers who fall victim to the false and misleading advertisements generated by Defendants and their co-conspirators. This is the Mona Vie Scheme. This lawsuit is designed to redress the harm done to Arkansas consumers as a result of the Mona Vie Scheme.

2.      Those who ignore history are bound to repeat it. Mona Vie's story is almost identical to that of Royal Tongan Limu -- another "super juice" product with too-good-to-be-true alleged health benefits. Both were created by Larsen. Both are based upon an exotic "superfood" found in remote locations of the world. Both marketing schemes were based on claims of outrageous health benefits from consuming the product ranging from curing cancer and diabetes to making your skin beautiful. Both were sold through multi-level marketing schemes where untrained "distributors" sell the product by extolling the unproven health benefits to unwitting consumers. Royal Tongan Limu came under FDA scrutiny for the false and misleading advertisements about its alleged health benefits and the product was ultimately taken off the market with the unsold inventory being poured into a landfill under FDA supervision. The false and misleading advertisements generated by the Mona Vie Scheme, which can best be described as propaganda, are just as offensive to the common law and consumer protection laws as was the Royal Tongan Limu advertising.

3.      The propaganda created through the Mona Vie Scheme is false and misleading about the nature of and benefits attributable to consuming Mona Vie juice. The propaganda is an essential component of the Scheme because the perpetuation of the belief that Mona Vie juice will cure or treat whatever health problems a consumer might have is the main reason Defendants are able to charge the wrongfully inflated price of approximately $45 for a 25 ounce bottle.

2

4.      The multi-level marketing sales structure is also an essential component of the Scheme. Defendants and their "independent distributor" sales force work together in a symbiotic fashion to sell as much wrongfully overpriced Mona Vie juice as possible.  Defendants know that their co-conspirator "independent distributors" generate false and misleading advertising about the health benefits of Mona Vie juice, but do not stop them because such advertisements generate sales of Mona Vie juice.  The most insidious form of this false and misleading advertising are the testimonials where individuals attribute miraculous medical breakthroughs to their individual chronic health condition to drinking Mona Vie juice.   Defendants, of course, taught their "independent distributors" how to generate such testimonials by themselves hiring individuals of modest celebrity to make their own misleading testimonials.

5.      Defendants are veterans of the multi-level-marketing scheme and are out to protect themselves and their unjust income stream derived from Mona Vie juice sales.  To do this, despite directly participating in the Scheme, Defendants let the "independent distributors" do their dirty work for them.  Defendants have learned through experience that this is best accomplished by trying to distance themselves from the wild and outrageous claims of health benefits attributable to Mona Vie juice consumption made by the "independent distributors." Defendants have cleverly crafted "policies and procedures" for their distributors allegedly forbidding them from making outrageous claims about Mona Vie juice.  However, this feigned attempt to distance themselves from the outrageous claims made is simply an effort to gain plausible deniability and shift blame to the "independent distributors" for the false and misleading advertisement which improperly drive sales and enrich Defendants.   While maintaining this ruse, Defendants have and continue to explicitly and tacitly approve of false and misleading advertisements created and promulgated by the "independent distributors."   The

3

reason is simple; without the propaganda, Defendants do not reap the unjust profits that flow from consumer's belief that Mona Vie juice will cure their health problems.

6.      Plaintiff brings this suit on behalf of himself and all other similarly situated individual residents of the State of Arkansas ("Class" or "Class Members") to remedy the Defendants' past and current practice of causing consumers to pay wrongfully inflated prices for the juices Defendants sell based on a pervasive pattern by Defendants and fellow Scheme members of misleading consumers about the contents, properties and health benefits of those juice products. The juice products addressed herein are: Mona Vie Original, Mona Vie Essential, Mona Vie Active, Mona Vie Pulse, Mona Vie Mmun, Mona Vie Kosher, Mona Vie E, Mona Vie E Lite, (collectively "Mona Vie Products").

## PARTIES

7.      Joe Neal Oliver is a resident of Miller County, Arkansas.  Oliver was a resident of Miller County, Arkansas at all relevant times to the allegations contained herein.

8.      Mona Vie, Inc. is a Utah corporation with its principal place of business being 10855 South River Front Parkway, Suite 100, South Jordan, UT 84095.  Mona Vie, Inc. is in the business of advertising, selling and distributing Mona Vie Products and has been so engaged at all times relevant to the allegations contained herein.  Mona Vie, Inc. may be served through its Registered Agent:

- Graden P. Jackson
  c/o Strong & Hanni
  3 Triad Center
  Suite 500
  Salt Lake City, UT 84180

Mona Vie Inc. may also be served through the following corporate officers:

- Dallin Larsen, President & Director

4

> 10855 South River Front Parkway
> Suite 100
> South Jordan, UT 84095

> - Randy Larsen, Vice President, Secretary & Director
>   10855 South River Front Parkway
>   Suite 100
>   South Jordan, UT 84095

> - Henry Marsh, Vice President & Director
>   10855 South River Front Parkway
>   Suite 100
>   South Jordan, UT 84095

9.     Mona Vie, LLC is a limited liability company organized under the laws of the state of

Delaware having its principal place of business at 10855 South River Front Parkway, Suite 100,

South Jordan, UT 84095.   Mona Vie, LLC is in the business of advertising, selling and

distributing Mona Vie Products and has been so engaged at all times relevant to the allegations

contained herein.  Mona Vie, LLC may be served through its Registered Agent:

> - Graden P. Jackson
>   c/o Strong & Hanni
>   3 Triad Center
>   Suite 500
>   Salt Lake City, UT 84180

Mona Vie Inc. may also be served through the following corporate officers:

> - Dallin Larsen, President & Director
>   10855 South River Front Parkway
>   Suite 100
>   South Jordan, UT 84095

> - Randy Larsen, Vice President, Secretary & Director
>   10855 South River Front Parkway
>   Suite 100
>   South Jordan, UT 84095
> - Henry Marsh, Vice President & Director
>   10855 South River Front Parkway
>   Suite 100
>   South Jordan, UT 84095

## JURISDICTION AND VENUE

10. This is a class action lawsuit seeking money damages and equitable relief pursuant to Arkansas Rule of Civil Procedure 23. Plaintiff files this lawsuit for the purpose of certifying an Arkansas-only class of Plaintiffs pursuant to A.R.C.P. 23.

11. This Court has personal jurisdiction over Mona Vie, Inc. and Mona Vie, LLC by virtue of their continuous and systematic contacts with the State of Arkansas, either directly or through an agent, subsidiary or other entity, including the extensive amount of business Defendants regularly conduct within the State of Arkansas, and further, because of the specific conduct at issue relating to Plaintiff and the Class, including Defendants' false and misleading advertisement in the State of Arkansas and the Defendants' selling, shipping and delivering Mona Vie Products to residents of the State of Arkansas. Defendants are also subject to the personal jurisdiction of this Court based on the systematic and continuous contacts of their co-conspirators in the State of Arkansas in connection with the Mona Vie Scheme described herein. This Scheme has had consequences all over the United States, including within the State of Arkansas, as shown by the Plaintiff's purchase of wrongfully overpriced Mona Vie Products based on his belief that the Mona Vie Products had prophylactic, therapeutic and curative health benefits. Defendants are amenable to service under the Arkansas long-arm statute and the exercise of personal jurisdiction over these Defendants does not offend traditional notions of fair play and substantial justice.

12. Defendants have purposefully availed themselves of the privilege of conducting activities within Arkansas, thus invoking the benefits and protections of its laws. Defendants or their agents or subsidiaries have made false and misleading advertisements and statements within the State of Arkansas and to residents of the state of Arkansas; sold Mona Vie Products to

6

individuals residing in Arkansas; caused Mona Vie Products to be delivered to individuals

residing in Arkansas; have or had agents in Arkansas; and/or affiliated themselves with persons,

such as fellow Scheme members described herein, who operate and/or conduct business in

Arkansas. These actions by the Defendants constitute sufficient minimum contacts with

Arkansas to warrant this Court's exercise of jurisdiction over them.

13.     The amount in controversy for Plaintiff and each Class Member is less than $75,000 for

purposes of federal jurisdiction. Plaintiff expressly stipulates to seek less than $75,000 total

recovery, including costs and expenses, court costs, pre and post-judgment interests, and

attorneys' fees, for each Plaintiff and Class Member.

14.     The amount in controversy in this action is less than five million dollars, exclusive of

interest and costs, for purposes of federal jurisdiction. Plaintiff stipulates that the total award

sought by himself and all Class Members is less than five million dollars when aggregated,

exclusive of interests and costs.

15.     All Defendants are properly joined pursuant to Arkansas Rules of Civil Procedure 23 and

20(a). Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as

representative parties on behalf of all..." Plaintiff is a member of the proposed class, as defined

herein, because he purchased Mona Vie Products within the class period and resided in the state

of Arkansas at the time the purchase was made. Therefore, he is an appropriate representative

and brings this lawsuit on behalf of all Class Members under Rule 23. Further, both Defendants

are properly joined pursuant to Rule 20(a), *Permissive Joinder*, which provides:

> All persons may join in one action as Plaintiff if they assert any right to
> relief jointly, severally or in the alternative in respect of or arising out of
> the same transaction, occurrence, or series of transactions or occurrences
> and if any question of law or fact common to all these persons will arise in
> the action. All persons may be joined in one action as defendants if there
> is asserted against them jointly, severally, or in the alternative, any right to

7

> relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the Plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

First, both Defendants are properly joined pursuant to Arkansas Rule of Civil Procedure 20(a) because this lawsuit arises from the wrongful conduct attributable to both Defendants in intentionally creating and publicizing, and participating in the creation and publication, of false and misleading advertisements and statements which resulted in injury to Plaintiff and the Class. Plaintiff and all Class Members seek the same relief against Defendants related to Defendants' participation in the Scheme to mislead the public and consumers about the true nature of and benefits attributable to Mona Vie Products. Second, and as a completely independent and alternative basis for joinder, all Defendants are properly joined pursuant to Arkansas Rule of Civil Procedure 20(a) because Plaintiff seeks relief jointly and severally from each Defendant based on the alleged Scheme to develop and provide consumers with false and misleading advertisements and statements about Mona Vie Products.

16.    Plaintiff incorporates by reference any and all facts alleged in this Complaint for purposes of establishing venue in Miller County, Arkansas. Venue for this proposed Rule 23 class action is proper in Miller County, Arkansas. First, venue is proper in Miller County, Arkansas, pursuant to Ark. Code Ann. Section 16-55-213. This is a class action. Pursuant to section 16-55-213, venue is proper in a class action in the county of residence of any properly joined named class representative. Joe Neal Oliver is currently a resident of Miller County, Arkansas. At the time Joe Neal Oliver heard and/or was provided false and misleading advertisements about Mona Vie Products, he was a resident of Miller County, Arkansas. At the

8

time he paid the wrongfully inflated purchase price of the Mona Vie Products, he was a resident of Miller County, Arkansas. At the time he received shipment of the Mona Vie Products, he was a resident of Miller County, Arkansas. Second, and completely independently, venue is also proper in Miller County, Arkansas, pursuant to Ark. Code Ann. Section 16-60-113. Pursuant to Section 16-60-113(b):

> any action for **any type of fraud** may be brought in the county where any one plaintiff resides or any one defendant is located; in the county where one or more of the acts utilized to induce, perpetuate, or conceal the fraud was performed; or in the county from which an act or one or more of the fraudulent acts or part of a scheme to defraud was originated or was communicated from or into by telephone, mail, or other means orally or in writing.

17. Plaintiff asserts a cause of action for fraud which triggers the applicability of the alternative Section 16-60-113(b) venue rule. Plaintiff currently resides in Miller County, Arkansas thereby satisfying the provisions of Section 16-60-113(b). Defendants, and/or their co-conspirators, are also located in Miller County by virtue of the fact they conduct business in Miler County, Arkansas. Plaintiff was a resident of Miller County when he learned of Defendants' false and misleading advertisements and false statements related to the Mona Vie Products and relied on them in paying the wrongfully inflated price for Mona Vie Products. Further, one or more of the fraudulent acts by, or on behalf of, Defendants' Scheme to defraud and mislead was communicated into Miller County, Arkansas by telephone, mail, internet or other means either orally or in writing. The fraudulent and wrongful acts set forth herein were designed to defraud and intentionally mislead Plaintiff and Class Members into paying wrongfully inflated prices for Mona Vie Products.

### FACTUAL INFORMATION REGARDING
### PROPOSED CLASS REPRESENTATIVE

18.     Joe Neal Oliver is a resident of Miller County, Arkansas and was so situated at all times relevant to this lawsuit.

19.     Joe Neal Oliver made two substantial purchases of Mona Vie Products from Defendants on August 27, 2010. One purchase was in the amount of $115.00 and another in the amount of $130.00.

20.     Prior to purchasing the Mona Vie Products, Oliver saw, heard and relied upon advertisements, representations and statements made by Defendants or other Scheme members about the alleged health benefits of drinking Mona Vie Products.    The advertisements, representations and statements which were relied upon by Oliver resulted from the Mona Vie Scheme described herein and were embraced either tacitly or expressly by Defendants.

21.     Oliver experienced none of the dramatic improvements in his health that were described by the improper advertising generated by the Mona Vie Scheme.

22.     As a result, Plaintiff suffered injury in fact and lost money as a result of the fraudulent conduct described herein.

### THE NATURE OF THE MONA VIE SCHEME

23.     Mona Vie is simply the newest creation of multi-level marketing, "health juice" impresario Dallin Larsen. Prior to launching Mona Vie in 2005 and becoming its president and CEO, Mr. Larsen was an executive for Dynamic Essentials. Dynamic Essentials' staple product was a "health" drink product called "Royal Tongan Limu." Larsen and Dynamic Essentials claimed the juice was a "superfood" derived from a sea plant found off the Pacific Island of Tonga.

10

24.     Much like Mona Vie, the advertising surrounding Royal Tongan Limu was based on untrue allegations of the health benefits of Royal Tongan Limu.  For example, Royal Tongan Limu was claimed to cure, prevent or treat diabetes, allergies, cancer and Alzheimer's disease, just to name a few.

25.     Advertising claims such as these and the countless other baseless and exaggerated claims of the health benefits and healing properties of Royal Tongan Limu were intentionally vague, misleading and designed to convince consumers that the juice had health properties which it plainly did not, and Larsen and Dynamic Essentials used the alleged health benefits to charge an excessive premium for the product.  Also, like Mona Vie Products, Royal Tongan Limu was sold through a multi-level marketing network.

26.     Within a few years of beginning operation, Dynamic Essentials was targeted by the Food and Drug Administration because of the unsubstantiated claims of therapeutic benefits espoused by Dynamic Essentials and its independent distributors.  The FDA determined that the marketing of Royal Tongan Limu was in violation of the law and Dynamic Essentials was ordered to cease and desist operations by the FDA.  Dynamic Essentials quit selling Royal Tongan Limu and was required to dispose of the unsold inventory under the supervision of the FDA – literally dumping it into a landfill in Illinois.  In closing the chapter on Royal Tongan Limu, the FDA stated:

> Getting rid of these bogus products, from a company that was giving false information about health benefits to consumers, underscores the message from the FDA to those who would mislead consumers about their health . . . We will not tolerate companies that raise false hopes for preventing and treating illnesses when there are more scientifically proven steps than ever before that consumers can take to improve their health.

FDA Press Release, November 10, 2003

11

27.     Not surprisingly, there are substantial parallels between the illegal Royal Tongan Limu

scam and the Mona Vie Scheme set in motion by Mr. Larsen and Defendants:

<blockquote>

a.     Mona Vie Products are sold in juice/drink form. So was Royal
       Tongan Limu.

b.     Mona Vie Products are heavily marketed as having strong anti-
       oxidant properties. So was Royal Tongan Limu.

c.     Mona Vie Products are heavily marketed as containing a superfood
       discovered in a remote location of the world (the Acai berry from
       South America), making it new to America, as the principal
       ingredient. So was Royal Tongan Limu (the sea plant from the
       South Pacific).

d.     Mona Vie Products are sold in bottles that resemble wine bottles in
       an effort to lend marketing credibility and an air of sophistication
       to the product. So was Royal Tongan Limu.

e.     Mona Vie Products are marketed and sold in the same price range
       as Royal Tongan Limu.

f.     Mona Vie Products are heavily marketed by internet videos
       promoting the natural ingredients and the substantial health
       benefits associated with the juices. So was Royal Tongan Limu.

g.     Mona Vie Products are heavily marketed as a daily drink, with
       Defendants recommending that the consumers drink an amount
       each day to achieve the maximum (alleged) health benefit. Royal
       Tongan Limu was marketed in the same way.

h.     Mona Vie Products are solely marketed through a multi-level
       marketing system. So was Royal Tongan Limu.

i.     The most important similarity between Mona Vie Products and
       Royal Tongan Limu products is that both are/were marketed as
       having substantial prophylactic, healing, therapeutic and curative
       powers for an almost limitless universe of diseases and conditions.

</blockquote>

28.     The sales structure through which the Mona Vie Products are sold is essential to the

success of the Scheme. As shown by the reference to Royal Tongan Limu, Defendants are

veterans of the multi-level-marketing game which has plagued consumers for decades

12

throughout this country. Defendants set up an elaborate network of independent Mona Vie Distributors ("Distributors") who are held out to be independent, individual businesses from Defendants. The vast majority of Distributors are people with no training in the science of nutrition, nor is any such training required or provided by Defendants before becoming a Distributor. In fact, most Distributors are people who simply work out of their home and who are seeking additional income. The Distributors and Defendants not only make money from selling Mona Vie Products, but also by convincing more individuals to become Distributors of Mona Vie Products. Each Distributor has to pay a price to become a Distributor and the Distributor then sells the Mona Vie Products.

29.     The attempt to distinguish Defendants from the Distributors is a ruse intentionally established by Defendants in an effort to insulate them from liability created by the outlandish claims made by their Distributors. As is set forth below, the relationship between the Defendants and the Distributors is an essential component of the Mona Vie Scheme. Defendants and the Distributors have a symbiotic relationship which results in a frenzy of misleading and false advertising and statements being made to and among the Distributors themselves and ultimately to the consumers to whom the Mona Vie Products are sold. The basic premise is simple – the more Mona Vie Products are sold, the more money Defendants and the Distributors make. What better way to sell Mona Vie Products than to convince customers that it will cure all that which ails them?

30.     Defendants and/or the Distributors recruit "medical experts" to offer vague, misleading and/or false testimony about the health benefits attributable to the Mona Vie Products. The Distributors then utilize the vague, false and misleading testimony, as well as other misleading

13

information learned through participation in the Scheme, to market the Mona Vie Products using equally, if not exaggerated, vague, misleading and/or false statements and advertisements.

31. There is no better example of this frenzy of deception than the recurrence of "Doctor" Lou Niles in the Mona Vie propaganda. Dr. Niles holds himself out to be a licensed, practicing MD oncologist. Upon information and belief, Lou Niles is neither an MD or an oncologist. However, he is a frequent pitchman for the Mona Vie Products and is used by Scheme members to lend "credibility" to the false and misleading claims that the Mona Vie Products help treat cancer and interfere with the process of aging. The following exchange occurred between Lou Niles and an individual at a Mona Vie conference while "Dr. Niles" stands before the camera and crowd resplendent in his official looking medical scrubs. This video was, and still is, available to consumers as it can be found by a simple search on www.youtube.com:

> **Question from audience:** I have a friend who has terminal cancer. She just got out of the hospital and they want to put her back in and she won't go back in. If she starts taking Mona Vie, a bottle a day, or whatever, will it ease her pain in any way?

> **Lou Niles:** It will help her – it will add quality to her life. If she has more than 90 days of life left, there is a possibility of reversing it ...

This type of false and misleading statement is then passed like wildfire through the network of Distributors who then pass the information along to consumers about the health benefits of the Mona Vie Products as stated by "Dr. Niles."

32. Defendants and Scheme members do not merely contend that the Mona Vie Products help cure cancer. In fact, Defendants and Scheme members claim that Mona Vie Products can literally provide medical benefits to nearly every known medical condition. For example, in a post on www.monavieforum.net, it states the following:

14

Below is a short list of conditions that natural healthy healing with Mona Vie may be an alternative to chemical based treatments: Fibromyalgia, Insomnia, Inflammation, Asthma, Intestinal Disease, Heart Disease, High Blood Pressure, High Cholesterol, Weight Loss, Arthritis Pain, Back Pain, Stroke, Sleep Apnea, Diabetes, Skin Disorders, Allergies.

This same post lists 39 reasons to drink Acai (the primary ingredient in the Mona Vie Products) everyday:

Extend Your Life
Increase Your Energy and Strength
Look and Feel Younger
Maintain Healthy Blood Pressure
Help Prevent Cancer
Maintain Healthy Cholesterol Levels
Promote Normal Blood Sugar and Manage Diabetes
Enhance Sexual Function
Help You Lose Weight
Relieve Headaches and Dizziness
Improve Quality of Sleep
Improve Your Vision
Strengthen Your Heart
Inhibit Lipid Peroxidation
Improve Disease Resistance
Improve Immune Response
Protect Your Precious DNA
Inhibit Tumor Growth
Reduce the Toxic Effects of Chemotherapy and Radiation
Build Strong Blood
Help Chronic Dry Cough
Fight Inflammation and Arthritis
Improve Lymphocyte Count
Treat Menopausal Symptoms
Prevent Morning Sickness
Improve Fertility
Strengthen Your Muscles and Bones
Support Normal Kidney Function
Improve Your Memory
Support Healthy Liver Function
Alleviate Anxiety and Stress
Brighten Your Spirit
Improve Digestion
Maintain Healthy Gums
Fight Fibromyalgia
Prevent Allergies

Protect Children's Health
Promotes Overall Wellness

33. Who doesn't have one of these conditions? This list is obviously designed to target anyone with even the most basic medical condition or simply a desire for a healthy life. It is precisely these types of claims which are made and further embellished by Defendants and their Distributors in the course of carrying out the Mona Vie Scheme.

34. As a central component of their advertising, Defendants themselves promote testimonials from people of modest notoriety who have allegedly had breakthrough medical results that they attribute to Mona Vie Products. For example, on www.monavie.com, there was a lengthy testimonial from NASCAR driver Geoff Bodine wherein Mr. Bodine claims that Mona Vie Products allowed him to stop taking sleep aids, and cured his chronically sore wrists, ankles and knees that were the product of years of professional car and truck racing. There is no doubt but that Defendants were portraying, through Mr. Bodine's testimonial, Mona Vie Products as both a sleep aid and pain reliever.

35. Further, this type of testimonial produced by Defendants acts as nothing less than a teaching aid to show its Distributors how to engage in false and misleading advertising, thereby perpetuating the Mona Vie Scheme. Defendants and Distributors encourage other people who have had such alleged medical breakthroughs to offer personal testimonials about how consuming Mona Vie Products changed their lives. The testimonials praise Mona Vie Products for curing everything from the effects of a stroke to diabetes. These testimonials are widely publicized and designed to do nothing more than lead to unrealistic expectations that all consumers may experience similar benefits.

36. This is merely a minute fraction of the type of misleading and false statements which have saturated the marketplace surrounding the Mona Vie Products. However, the theme of all

16

advertising resulting from the Scheme is consistent – Mona Vie Products provide unheralded medical benefits and can help with whatever condition may be ailing an unwitting consumer.

37.     Defendants' false and misleading statements and advertising is not solely designed to trick consumers into buying Mona Vie products.  It is also designed to trick consumers into becoming Distributors of Mona Vie Products by making them believe the juices are something that they simply are not.  Most of the Distributors have learned the truth about the Mona Vie Products and are no longer serving as Distributors.  In fact, it is estimated that between 70% to 90% of Distributors cease their relationship with Defendants within the first year.  Because of the parallel avenues of profit flowing to Defendants from both the sale of Mona Vie Products and the purchasing of "distributorships" by individuals, Defendants' incentive to perpetuate the Mona Vie Scheme is clear.

38.     The use of the Mona Vie trademark and name in these false and misleading advertisements, statements and testimonials demonstrates that Defendants actually or impliedly endorse the advertisements and statements.  The name of the Mona Vie Products and/or the trademark are utilized through the course of testimonials of miraculous recoveries from disease or remarkable improvements in chronic conditions that are designed to lead consumers to believe that they may be able to attain similar results simply by drinking Mona Vie Products.

39.     Defendants were and are aware of the potential for Distributors to make outlandish claims about the benefits of the Mona Vie Products.  In fact, Defendants make it clear in their policies and procedures for Distributors that Distributors are forbidden from making claims about the medicinal or curative benefits of the Mona Vie Products.  Defendants' executives have stated publicly the fact that their "independent" sales staff is hard to control.  In fact, Mr. Larsen has referred to attempting to control the Distributors as trying to "herd cats."

40. Despite what appears to be a contractual ban to making outlandish claims about the prophylactic treatment and curative benefits of the Mona Vie Products, and a feigned air of corporate indignance by Defendants about the illegal advertising its fellow Scheme members produce, it is undisputed that Defendants benefit financially from whatever sales tactic sells the most Mona Vie Products. Defendants have allowed these false and misleading advertisements to proliferate and only stop them when absolutely forced to do so.

41. Defendants have tried to erect an elaborate artifice to allow them to claim that the Mona Vie corporate entities do not endorse anything but the most sterile and straightforward of advertisements while knowing and explicitly allowing the Distributors, who are not Defendants' employees, to make outlandish claims about the health benefits of the Mona Vie Products in an effort to sell more juice. This is clearly an artifice to attempt to insulate Defendants from what is obvious liability for the false and misleading advertisements created by their Distributors and fellow Scheme participants.

42. Defendants have orchestrated this Scheme with the intent of maximizing sales of Mona Vie Products through the proliferation of improper advertising. In an effort to perpetuate the Scheme, Defendants try to keep a respectable distance from the outlandish claims of its Distributors. Defendants' efforts to distance themselves from the improper advertising generated by the Scheme is illusory and only allows them to reap further benefits from the Scheme. Defendants have intentionally created a corporate environment where the clear intent is to have consumers rely upon the false or misleading advertisements or statements generated by the Scheme. The end result of the Scheme is the purchase of wrongfully overpriced Mona Vie Products to the financial gain of Defendants and to the detriment of Plaintiff and Class Members.

18

## CLASS ALLEGATIONS

43.     Plaintiff brings this lawsuit on behalf of himself, and all other Arkansas residents

similarly situated, pursuant to A.R.C.P. 23. The Class that Plaintiff seeks to represent consists

of:

>       All individual residents of the state of Arkansas who purchased Mona Vie
>       Products before January 1, 2011. Excluded from the Class are: (1)
>       Individuals who, at any point, have served as a Distributor for Defendants;
>       (2) Defendants and all directors, officers, employees, partners, principals,
>       shareholders and agents of Defendants; (3) Persons or entities who timely
>       opt-out of this proceeding using the correct protocol for "opting-out" that
>       will be formally established by this Court; (4) Any and all Federal, State
>       and/or Local Governments, including, but not limited to, their
>       Departments, Agencies, Divisions, Bureaus, Boards, Sections, Groups,
>       Councils and/or any other subdivision, and any claim that such
>       governmental entities may have directly or indirectly; (5) Any currently-
>       sitting Arkansas State Court Judge or Justice, and the current spouse and
>       all other persons within the third-degree of consanguinity to such
>       judge/justice.

44.     The Class comprises thousands of individuals geographically dispersed across the state of

Arkansas, the joinder of whom is impractical and the disposition of whose claims in a class

action will provide substantial benefit to the parties and the court system. The identities of Class

Members can be ascertained from Defendants' records, either manually or through computerized

searches.     Joining and naming each Class Member as a co-plaintiff is unreasonable and

impracticable. Such a requirement would only result in Defendants' retention of monies by

which they have been unjustly and fraudulently enriched as a result of their wrongful, misleading

and deceptive conduct.

45.     There is a well-defined commonality of interest in the questions of law and fact that

affect the Class Members. Indeed, questions of law and fact common to the Class plainly

predominate over any questions affecting only individual Class Members. For purposes of

illustrating the predominating nature of the common questions, several broad common questions

are posed below, although dozens more discreet common questions will flow from each broad question and will be set forth at the time of class certification:

a.   Have Defendants engaged in an overarching scheme between themselves and their Distributors to wrongfully profit by creating or tacitly approving false and/or misleading advertisements and statements about the health benefits of Mona Vie Products?

b.   Was the purpose of the Mona Vie Scheme to increase sales of Mona Vie Products and thus the profits of the Scheme members?

c.   Have Defendants created false or misleading advertisements and/or statements about Mona Vie Products which were made public?

d.   Have Defendants' Distributors created false or misleading advertisements and/or statements about Mona Vie Products which were made public?

e.   Have Defendants ever been aware of the production and/or publication of false or misleading advertisements or statements about Mona Vie products?

f.   Have Defendants affirmatively approved false or misleading advertisements and/or statements about Mona Vie Products?

g.   Have Defendants tacitly approved what they knew to be false or misleading advertisements and/or statements about Mona Vie Products?

h.   If Defendants were aware of false or misleading advertisements or statements being created and publicized by their Distributors about Mona Vie Products, did Defendants take appropriate action based on that knowledge?

i.   Did Defendants intend for consumers to rely on false or misleading advertisements or statements when considering the purchase of Mona Vie Products?

j.   Did Defendants conceal, suppress or omit material information about the proven medical benefits of Mona Vie Products?

k.   Did Defendants have a duty to be honest and forthright about the proven benefits of Mona Vie Products with consumers?

l.   Did Defendants allow their trademark or corporate identity to be used on false or misleading advertisements or statements about Mona Vie Products?

m.   Are the representations by Defendants and the Distributors about the content of Mona Vie Products accurate?

n.   Are the representations by Defendants and the Distributors about the nutritional contents of the Mona Vie Products accurate?

o.   Are the representations by Defendants and the Distributors about the nutritional contents of the Mona Vie Products provable by generally accepted, laboratory-based scientific analysis?

p.   Are Defendants' sales tactics deceptive or unconscionable?

46.   The claims asserted by Plaintiff are typical of claims of the Class. Plaintiff purchased Mona Vie Products and relied upon advertisements and statements made to him about the content and health benefit of the Mona Vie Products as a basis for his purchase.

47.   Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Class are coincident with and not antagonistic to those of the Plaintiff. Plaintiff has the ability to intelligently assist in the decision-making for this litigation. Furthermore, the Plaintiff is represented by legal counsel that are both competent and experienced in this type of class action litigation.

48.   Defendants' conduct with respect to the Scheme was uniform in the creation, approval and dissemination of false and misleading propaganda about Mona Vie Products. Defendants engaged in the Scheme with the intent to have Class Members rely on the false and misleading advertisements or statements about Mona Vie Products to their detriment. Consequently, common questions of law and fact will predominate.

49.     This Class Action is not only an appropriate method for the fair and efficient adjudication

of this controversy but is, in fact, superior to all other available methods because:

      a.    The joinder of the thousands of geographically diverse individual Class Members across the state of Arkansas is impracticable, cumbersome and unduly burdensome;

      b.    There is no special interest by Class Members in individually controlling the prosecution of separate actions;

      c.    Class Members' individual claims may be relatively modest compared with the expense of litigating the claim, making it impracticable, unduly burdensome and expensive, if not practicably impossible, to justify individual Class Members from redressing their loss;

      d.    When the Defendants' liability has been adjudicated, claims of all Class Members can be determined by this Court and administered efficiently and in a manner far less onerous and burdensome than if attempted through the filing of individual lawsuits;

      e.    This Class Action will promote an orderly and expeditious adjudication and administration of Class claims, and promote economies of time, effort and resources;

      f.    This Class Action will assure uniformity of decisions among Class Members;

      g.    Without this Class Action, Class Members will go without money damages;

      h.    Without this Class Action, no damages will be ordered and Defendants will be unjustly enriched and reap the benefits of the monies they have retained as a result of their wrongful and fraudulent conduct; and

      i.    The resolution of this controversy through this Class Action presents fewer management difficulties than individually filed lawsuits and conserves the resources of the parties and the judicial system while protecting the rights of each Class Member.

50.     Plaintiff seeks money damages pursuant to the common and statutory laws of the state of

Arkansas. Plaintiff specifically is not seeking damages under any federal regulation or law.

Further, Plaintiff is specifically not seeking to enforce any regulatory or administrative guidelines which may have been promulgated by the Federal Trade Commission, the Food and Drug Administration, or other federal agency. Plaintiff is also not seeking damages under, nor seeking to enforce, any regulatory or administrative guideline which may have been promulgated by any agency of the State of Arkansas.

## FRAUDULENT CONCEALMENT

51.     Defendants had a duty to disclose to Plaintiff and Class Members the truth about the contents of the Mona Vie Products and the extent of their actual health benefits. Defendants' duty is based on their position as a seller in an arms-length sale of goods. Defendants' duty is also based on their superior knowledge about the contents of the Mona Vie Products and the health benefits which may inure to a consumer as a result of drinking the Mona Vie Products. The existence of this duty is enhanced by the fact that Defendants and other Scheme members tout that Mona Vie Products have been scientifically tested thereby giving the implication that they have been scientifically shown to provide the level of health benefits claimed by the Mona Vie propaganda. Defendants' false and misleading marketing is riddled with purportedly complex, if not obscure, chemical and nutritional statements which the average consumer will know very little about. Further, Defendants target a specific segment of the population with their false and misleading advertisements. Defendants' market predominantly to people who are looking for medical assistance – something to relieve everything from bad skin to curing cancer – thereby making Defendants' target market one which may be more susceptible to false or misleading advertisement based on their condition. Through their acts in furtherance of the Scheme, including but not limited to creating and approving false or misleading advertisements, Defendants induced all Scheme members to breach legal obligations owed to Plaintiff and Class

Members, and as such are responsible for each and every breach of duty committed by other Scheme members. Defendants were aware that Scheme members were creating and publicizing false or misleading advertisements or statements about the Mona Vie Products, but made no sincere effort to stop the publication of such information, thus making them responsible for the breach of duties owed to every Class Member based on their participation in the Scheme.

52. Rather than disclosing information about the Scheme to Plaintiff and Class Members, Defendants actively and fraudulently concealed and/or exaggerated information regarding the nature, content and health benefits of the Mona Vie Products from Plaintiff and Class Members.

53. Had either Defendant chosen to lift the veil of false and misleading advertising or statements surrounding the Mona Vie Products, the entire Scheme would have been exposed, the wrongful conduct would have ceased, and Class Members would have stopped being injured by overpaying for fruit juice.

54. Plaintiff and Class Members purchased Mona Vie Products because of the alleged health benefits which were touted through the Scheme and by its members. Plaintiff and Class Members would not have paid approximately $40 for 25 ounces of fruit juice which ordinarily may cost only a few dollars unless there was a significant health benefit expected. Defendants knew this was the basis for Plaintiff and Class Member's purchase of Mona Vie Products. Defendants knew the basis for Plaintiff and Class Member's purchase was wrong or at least scientifically unproven, and that the health benefits of the Mona Vie products had been greatly exaggerated if not totally fabricated as a result of the Scheme. Defendants allowed Plaintiff and Class Members to continue in their mistaken belief regarding the health benefits of Mona Vie Products which is a breach of the duty owed to consumers and is a deceptive and unfair trade practice.

24

55.     Defendants' acts of participation in the Scheme constitute positive acts of fraud that were furtively planned and secretly executed in a manner that was designed to conceal the conspiracy and its wrongful acts.  Plaintiff and Class Members could not have known of the conspiracy to mislead them or how it affected them through the exercise of reasonable diligence because they were without technical expertise to scientifically test the false or misleading advertising or statements promulgated by Defendants through the Scheme.  Further, Defendants actively defend the alleged health benefits of the Mona Vie Products.  Thus, even if Plaintiff or a Class Member took it upon themselves to research the potential benefits of the Mona Vie Products, they would have come across propaganda generated through the Scheme which would cloud their search for the truth.

56.     Defendants' acts of participation in the Scheme, and its ongoing nature, are individual affirmative acts of fraud which amount to more than a simple continuation of a prior non-disclosure.

57.     Defendants' fraudulent concealment tolls the running of any applicable statute of limitations.

## MISCELLANEOUS

58.     Any condition precedent to the institution of this lawsuit has been performed, has occurred, or has been waived.

## COUNT I:  CIVIL CONSPIRACY

59.     Plaintiff fully incorporates into this Paragraph each and every allegation contained in Paragraphs 1 through 58 of this Complaint as if each were fully iterated verbatim herein.

60.     Defendants conspired to create a false and misleading belief that the Mona Vie Products were worth the exorbitant price paid for them with the goal of selling as much of the Mona Vie

25

Products as possible. This conspiracy was perpetuated by the creation and use of false or misleading advertisements and statements, exaggerated if not outright false claims related to the content of the Mona Vie products, exaggerated if not outright false claims of the health benefits of the Mona Vie Products, and the creation of the multi-level marketing program which was designed to insulate Defendants from the inevitable fallout from the false and misleading advertisements and statements. Each Defendant conspired with the other Defendant, and along with the active Distributors, to intentionally create a false and misleading perception of Mona Vie Products as having medicinal qualities and being worth the exorbitant price set. The purpose of this conspiracy was the inflation and maintenance of the wrongfully inflated purchase price of the Mona Vie Products and to sell as much of the Mona Vie Products as possible for that wrongfully inflated price.

61.    Defendants continued to wrongfully allow active Distributors to improperly promote the Mona Vie Products as having medicinal qualities after they knew such claims to be exaggerated if not plainly false. This continued improper promotion was negligent, fraudulent, a violation of the Arkansas Deceptive Trade Practices Act and resulted in the unjust enrichment of Defendants at the expense of Plaintiff and Class Members.

62.    Defendants have conspired to withhold from Plaintiff, the Class, and the public, information about the true content and proven (or unproven) health benefits of the Mona Vie Products, and what a fair market price would be based on the known potential health benefits of the Mona Vie Products.

63.    As a direct and proximate result of Defendants' conspiracy among themselves and other Scheme members, Plaintiff and Class Members have been misled, defrauded, and deprived of money that should have rightfully been retained by them. Defendants' conduct was wrongful

26

and immoral and the manner in which it was pursued through fraudulent conduct was likewise wrongful and immoral.

64.     Defendants should be held jointly and severally liable for Plaintiff's and Class Member's damages sustained as a result of the unlawful conspiracy among themselves and fellow Scheme members. Each Defendant was aware that its participation in the unlawful Scheme resulted in the breach of duties owed by other Scheme members to consumers such as Plaintiff and the Class. As such, each Defendant is liable for the wrongful conduct by each co-conspirator and subsequent damage to each Class Member.

65.     The conduct of Defendants was intentional, willful, malicious, and/or in reckless disregard of the rights of others.

## COUNT II: NEGLIGENCE

66.     Defendants chose to market the Mona Vie Products based on their alleged health benefits. Thus, Defendants owed a duty to Plaintiff and the Class to be honest and forthright about the established benefits of consuming Mona Vie Products. Defendants were aware that consumers would rely upon the representations made by them and the Distributors about the content and claimed health benefits of consuming Mona Vie Products. Defendants were in a superior position to know the true contents and health benefits of consuming Mona Vie Products compared to the average consumer. Defendants were aware that their Distributors were making claims with respect to the content and claimed health benefits of consuming the Mona Vie Products. Defendants contractually had the ability to prevent false or misleading advertisements or statements by its Distributors. Defendants also had the right to control the usage of its corporate name and registered trademark in the sale of Mona Vie Products. Defendants had an obligation to assure that their corporate name and/or trademark was not improperly utilized to

mislead consumers. Defendants were required to ensure that all of the aforementioned duties were complied with to prevent consumers from being actively and knowingly misled.

67.    This duty was repeatedly breached by the fact Defendants created and/or tacitly approved false or misleading advertisements which Defendants knew were being provided to consumers such as Plaintiff and the Class. Defendants were aware that their corporate name and trademarks were being used in the course of false and misleading advertisements and statements designed to entice consumers to purchase Mona Vie Products at wrongfully inflated prices based on those false and misleading advertisements or statements. Defendants knew that the false or misleading advertisements or statements were resulting in sales of Mona Vie Products. Defendants knew that the established health benefits of the Mona Vie Products were not in line with the type of false and misleading information put into the stream of commerce by themselves and Scheme members. Despite this level of knowledge attributable to Defendants, they breached all the aforementioned duties owed to consumers by continuing to allow the Scheme to proceed unfettered because of the huge profits the Scheme members, particularly Defendants, were reaping as a result of the false and misleading advertisements or statements.

68.    The breaches of the aforementioned duties directly resulted in damage to Plaintiff and the Class. Plaintiff and the Class would not have paid approximately $45 for 25 ounces of juice had they known that very few, if any, of the claims made about the content of the Mona Vie products and their alleged health benefits were true. Plaintiff could have received equal health benefits from consuming juices or supplements which are available at much cheaper prices because such items were not shrouded in the frenzy of multi-level-marketing hype driven by participation in the Scheme.

69.     By reasons of the foregoing, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

### COUNT III: VIOLATION OF THE ADTPA

70.     Plaintiff fully incorporates into this Paragraph each and every allegation contained in Paragraphs 1 through 69 of this Complaint as if each were fully iterated verbatim herein.

71.     Unfair or deceptive trade practices are not allowed in Arkansas and the conduct of Defendants plainly violates the dictates of the Arkansas Deceptive Trade Practices Act (ADTPA). The false and misleading advertisements, statements and other propaganda generated by and attributable to Defendants and as a result of the Scheme do not comply with rules, order or statutes regarding advertising or sales practices administered by the Federal Trade Commission.

72.     Arkansas Code Annotated 4-88-107 of the ADPTA prohibits deceptive and unconscionable trade practices such as those engaged in by Defendants. Specifically, 4-88-107(a)(1) provides that it is a deceptive and unconscionable trade practice to make a false representation as to the characteristics, ingredients, uses, or benefits of goods. It is also a deceptive trade practice to represent that the goods are of a particular standard, quality or grade. Further, section 107(a)(10) prevents anyone from engaging in other unconscionable, false or deceptive acts or practice in business, commerce or trade.

73.     Section 4-88-108(1) of the ADTPA states that in connection with the sale or advertisement of any goods, the act or use by any person of any deception, fraud or false pretense is unlawful. Further, section 4-88-108(2) makes it unlawful for anyone to conceal, suppress, or omit any material fact with the intent that others rely upon the concealment, suppression or omission.

29

74.     Defendants' actions, in the course of the Scheme described herein, plainly constitute violations of the aforementioned provisions of the ADTPA. Defendants have directly made false and misleading statements and advertisements about the content and health benefits of Mona Vie Products. Defendants are also, through their participation in the Scheme described herein, responsible for the false and misleading representations made by other Scheme members to Plaintiff and Class Members which resulted in the purchase of Mona Vie Products.

75.     Defendants have also concealed, suppressed and omitted material facts about the contents and health benefits of the Mona Vie Products through the use of deception, fraud and false pretenses.    Defendants individually and through the Mona Vie Scheme have relentlessly provided consumers with false and misleading information about the content and health benefit of Mona Vie Products by omitting the known potential health benefits in favor of misleading and false advertising and statements.

76.     Plaintiff and the Class have been directly harmed by actions attributable directly to Defendants and those actions attributable to the larger Mona Vie Scheme. Defendants made individually and through the Mona Vie Scheme false and misleading representations and advertisements with the intent that consumers rely on them when contemplating the purchase of Mona Vie Products. Further, Plaintiff and the Class reasonably relied upon those representations and advertisements when making the decision to purchase Mona Vie Products.

77.     By reason of the foregoing, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

## COUNT IV: UNJUST ENRICHMENT

78.     Plaintiff fully incorporates into this Paragraph each and every allegation contained in Paragraphs 1 through 77 of this Complaint as if each were fully iterated verbatim herein.

79.     Plaintiff and Class Members reasonably expected to not be scammed in the purchase of Mona Vie Products.    Plaintiff and Class Members reasonably relied on the advertising, representations and statements made by Defendants and other Scheme members when purchasing Mona Vie Products.  Plaintiff and Class Members believed they were paying a fair price for the Mona Vie Products based on the advertising, representations and statements made by Defendants and other Scheme members.  Defendants took money from Plaintiff and the Class Members knowing that they had misled Plaintiff and Class Members into paying an unreasonable price for juice based on the false information about the Mona Vie Products which had been provided to Plaintiff and the Class.    Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent.

80.     Defendants concealed from Plaintiff and the Class the true level of known health benefits of the Mona Vie Products and how such alleged health benefits might differ from other items which are much cheaper and readily available to consumers.  The point of concealing this information about the Mona Vie Products was to allow the Mona Vie Scheme to continue to cause Plaintiff and Class Members to grossly overpay for the Mona Vie Products resulting in huge profits to Defendants and other Scheme Members.  Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent.

81.     Each Defendant relied upon the symbiotic nature of the relationship among the Mona Vie Scheme members to continue to provide false and misleading advertisements and statements to consumers to reap huge profits from consumers duped by the Scheme. As a result, Defendants derived unjust and unfair profits by charging grossly inflated prices for Mona Vie Products which were not proven to provide the level of health benefits consumers came to expect as a

31

result of the false and misleading advertising campaign.  Defendants conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent.

82.     Plaintiff was, and consumers are, entitled to truthful disclosure from Defendants of all information related to the alleged health benefits of the Mona Vie Products so that an informed decision could be made regarding the purchase of Mona Vie Products.  Defendants intentionally do not make truthful disclosures about the known health benefits of the Mona Vie Products, but rather continue on with the provision of the Mona Vie Scheme propaganda in an effort to further their own financial self interest.  Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent.

83.     Because Defendants never disclosed to Plaintiff material information regarding Mona Vie Products that would be vital to Plaintiff, and any consumer's, decision to pay approximately $45 for 25 ounces of juice, Plaintiff and Class Members were put in an unfair and unjust position with respect to the purchase of Mona Vie Products.  Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent.

84.     Defendants took unfair and/or undue advantage of Plaintiff and Class Members through the Mona Vie Scheme.

85.     Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that they should have never received but for the false and misleading Mona Vie propaganda campaign.

86.     Defendants' retention of monies that should have been retained by or paid to Plaintiff and the Class Members served to benefit Defendants at the express detriment of Plaintiff and Class Members.

87.     Defendants' retention of monies that should have been retained by or paid back to Plaintiff and Class Members under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, dishonest and fraudulent in relation to Plaintiff and Class Members.

88.     Each Defendant was unjustly enriched by all Scheme member's participation in the Scheme described herein.  By participating in the Mona Vie Scheme, each Defendant was enriched by Plaintiff and the Class paying wrongfully inflated prices for Mona Vie Products. Thus, each Defendant was unjustly enriched as a result of the conduct of the other Defendant and all other Scheme members.

89.     For all the above stated reasons, Defendants were each unjustly enriched to the express detriment and disadvantage of Plaintiff and Class members.

90.     Plaintiff expects fully that Defendants will assert that they have no way to adequately identify all Class Members, rendering it difficult to identify sums due each Plaintiff.

91.     If the Court finds the allegations contained in Paragraph 90, above, to be correct, then Plaintiff and the Class will have no adequate remedy at law.

92.     Defendants should not be allowed to retain any part of the amounts they have received because of the Mona Vie Scheme.

93.     Defendants entered into a conspiracy to perpetuate the acts of misconduct, unfairness, injustice, inequity, dishonesty, fraud and/or unjust enrichment described above, and continue to receive and retain ill-gotten monies and profits knowing retention of such money was improper.

94.     By reason of the foregoing, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

33

## COUNT V: FRAUD

95.    Plaintiff fully incorporates into this Paragraph each and every allegation contained in Paragraphs 1 through 94 of this Complaint as if each were fully iterated verbatim herein.

96.    Defendants knowingly and intentionally made or tacitly approved an entire line of false and misleading advertising that can be properly described as widespread propaganda designed to encourage and entice Plaintiff and Class Members to purchase Mona Vie Products at wrongfully inflated prices. Defendants knowingly participated in the creation and widespread publication of the Mona Vie propaganda with the specific intent that Plaintiff, Class Members, and all consumers rely on them when deciding to purchase Mona Vie Products.

97.    Plaintiff and Class Members made inquiries of Defendants or other Scheme members about the amount that was necessary to purchase Mona Vie Products. In response, Defendants made numerous express and implied representations and gave assurances to Plaintiff, including but not limited to the following:

       a.     that the Mona Vie propaganda was not misleading or false;

       b.     that the Mona Vie propaganda was based on actual scientific studies which warranted the representations made in the Mona Vie propaganda;

       c.     that the Mona Vie Products would provide the level of health benefits to Plaintiff and the Class consistent with the claims made in the Mona Vie propaganda;

       d.     that Defendants were not creating the Mona Vie propaganda to artificially inflate the price of Mona Vie products;

       e.     that the price for the Mona Vie Products were not wrongfully inflated.

98.     Defendants knowingly, purposefully and fraudulently concealed and hid

material facts and information from Plaintiff and failed to disclose material facts and

information to Plaintiff related to the Mona Vie Products.

> a.  Defendants did not adequately disclose to Plaintiff or Class Members the fact that there was no scientific proof that the Mona Vie Products would produce the level of health benefits promised through the propaganda campaign;
>
> b.  Defendants did not adequately disclose to Plaintiff or the Class of their participation in the Mona Vie Scheme to artificially and wrongfully inflate the price of Mona Vie Products.
>
> c.  Defendants did not adequately disclose that the Mona Vie propaganda was riddled with overstatements, exaggeration, outright lies and misleading statements and testimonies.
>
> d.  Defendants did not adequately disclose that they had a practice of not disclosing information which would adversely affect the sales volume or the wrongfully and artificially inflated purchase price of Mona Vie Products.

99.    Defendants knew that full disclosure of truthful information surrounding the consumption

of Mona Vie Products would have been important to Plaintiff and Class Members and that

receipt of such information would have caused them to perhaps not purchase the Mona Vie

Products, or purchase them at a significantly reduced rate.

100.    Such representations and assurances from Defendants to Plaintiff and Class Members,

and such omissions, concealment and failure to disclose by Defendants, were fraudulent, false

and/or misleading.   Defendants had a duty to disclose information to Plaintiff and Class

Members related to the proven health benefits of the Mona Vie Products and an obligation to be

honest and forth right with Plaintiff and Class Members regarding the proven health benefits of

the Mona Vie Products.

35

101.    Defendants knew such representations, assurances, omissions and concealment were fraudulent, false and/or misleading at the time they were made.

102.    Defendants intended for Plaintiff and Class Members to rely upon such fraudulent, false and/or misleading representations, assurances, omissions and concealment.

103.    Plaintiff and Class Members reasonably and justifiably relied upon such false and/or misleading representations, assurances, omissions and concealment to their detriment and injury by paying wrongfully and dramatically overinflated prices for Mona Vie Products.  This reliance was based, among other things, on the position of power through specialized knowledge Defendants have and had over consumers regarding scientific properties of nutrition.

104.    Defendants further made representations that they were honest, acted with integrity and adhered to professional ethical standards in connection with the conduct of their business.

105.    Such representations from Defendants were false and/or misleading.

106.    Defendants knew such representations were false and/or misleading at the time they were made.

107.    Defendants intended for Plaintiff and Class Members to rely upon such false and/or misleading representations and assurances.

108.    As a result of these fraudulent, false and/or misleading representations, assurances, omissions and concealment, Plaintiff and Class Members have been harmed and Defendants have been able to retain monies in the form of wrongful profits derived from the overpriced Mona Vie Products.

109.    Because of the close cooperation between Defendants and Scheme members in perpetuating the Mona Vie Scheme, and because of each Defendant's active role in keeping the Scheme hidden from Plaintiff and Class Members, each Defendant is responsible for the fraud

committed by every other Scheme member. Additionally, each Defendant had a duty to disclose the improper nature and purpose of the Scheme, but did not do so. As a result of their participation in and failure to disclose the improper Scheme, each Defendant is liable for the wrongful conduct of the other Defendant as well as all other Scheme members.

110. By reason of the foregoing, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

## COUNT VI: CONSTRUCTIVE FRAUD

111. Plaintiff fully incorporates into this Paragraph each and every allegation contained in Paragraphs 1 through 110 of this Complaint as if each were fully iterated verbatim herein.

112. Because of the special relationship between Plaintiff and Defendants and its Scheme members, Defendants had a duty to disclose the information set forth above to Plaintiff and the Class.

113. Defendants' failure to disclose such material information constitutes constructive fraud, which has injured Plaintiff and Class Members in the manner described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Joe Neal Oliver, individually and as class representative on behalf of all similarly situated persons, respectfully prays for relief and judgment against the Defendants, jointly and severally, as follows:

a. Certifying that the action may be maintained as an Arkansas-only class action under A.R.C.P. 23, and appointing Plaintiff and Plaintiff's counsel to represent the Class;

b. Awarding money damages from the Defendants to Plaintiff and Class Members in the amount Plaintiff and the Class Members overpaid for the Mona Vie Products, provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and Class Member and that Plaintiff seeks less than $5,000,000 in total aggregate award for himself and all Class Members, and further

37

provided that Plaintiff hereby stipulates that he does not seek double recovery by setting forth multiple theories of recovery or multiple remedies, and further provided that Plaintiff hereby stipulates he will not seek, and therefore disclaims, any potential or actual entitlement to statutory attorney fees or punitive damages that may be available based on the allegations made herein;

c.   Alternatively, awarding Plaintiff and the proposed Class Members an amount to be determined at trial that represents the amount by which Defendants have been unjustly enriched as a result of the Mona Vie Scheme, provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and Class Member and that Plaintiff seeks less than $5,000,000 in total aggregate award for himself and all Class Members, and further provided that Plaintiff hereby stipulates that he does not seek double recovery by setting forth multiple theories of recovery or multiple remedies, and further provided that Plaintiff hereby stipulates he will not seek, and therefore disclaims, any potential or actual entitlement to statutory attorney fees or punitive damages that may be available based on the allegations made herein;

d.   Alternatively, awarding Plaintiff and the proposed Class Members an amount to be determined at trial and to be disgorged by Defendants that represents the amount by which Defendants have benefited from the Mona Vie Scheme, provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and Class Member and that Plaintiff seeks less than $5,000,000 in total aggregate award for himself and all Class Members, and further provided that Plaintiff hereby stipulates that he does not seek double recovery by setting forth multiple theories of recovery or multiple remedies, and further provided that Plaintiff hereby stipulates he will not seek, and therefore disclaims, any potential or actual entitlement to statutory attorney fees or punitive damages that may be available based on the allegations made herein;

e.   Awarding pre-judgment interest to prevent Defendants from receiving additional unjust enrichment from the Mona Vie Scheme; provided that Plaintiff seek less than $75,000 total recovery for each Plaintiff and Class Member and that Plaintiff seeks less than $5,000,000 in total aggregate award for himself and all Class Members, and further provided that Plaintiff hereby stipulates that he does not seek double recovery by setting forth multiple theories of recovery or multiple remedies, and further provided that Plaintiff hereby stipulates he will not seek, and therefore disclaims, any potential or actual entitlement to statutory

attorney fees or punitive damages that may be available based on the allegations made herein;

f.  Awarding attorneys' fees and costs; provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and Class Member and that Plaintiff seeks less than $5,000,000 in total aggregate award for himself and all Class Members, and further provided that Plaintiff hereby stipulates that he does not seek double recovery by setting forth multiple theories of recovery or multiple remedies, and further provided that Plaintiff hereby stipulates he will not seek, and therefore disclaims, any potential or actual entitlement to statutory attorney fees or punitive damages that may be available based on the allegations made herein;

g.  Awarding such other and further relief as the Court deems just and proper; provided that Plaintiff seeks less than $75,000 total recovery for each Plaintiff and Class Member and that Plaintiff seeks less than $5,000,000 in total aggregate award for himself and all Class Members, and further provided that Plaintiff hereby stipulates that he does not seek double recovery by setting forth multiple theories of recovery or multiple remedies, and further provided that Plaintiff hereby stipulates he will not seek, and therefore disclaims, any potential or actual entitlement to statutory attorney fees or punitive damages that may be available based on the allegations made herein.

Through whatever form of relief may be available, Plaintiff seeks recovery of less than $75,000 for each Plaintiff or Class Member and less than $5,000,000 in total aggregate award from all Defendants, jointly and severally, including all interests and costs, including prejudgment interest, post-judgment interest, court costs, statutory and non-statutory attorneys fees. Therefore, although Plaintiff contends Defendants are jointly and severally liable for all damages and relief owed to each Plaintiff and Class Member, Plaintiff expressly seeks less than $75,000 total – from whatever source – on behalf of each Plaintiff or Class Member, and less than $5,000,000 total aggregate award for Plaintiff and Class Members–from whatever source – and so stipulates for all purposes. Pursuant to Arkansas Rule of Civil Procedure 8(a), each Plaintiff and each Class Member is limited to less than $75,000 recovery individually and less than $5,000,000 total aggregate award for all Class Members.

Respectfully submitted,

JOHN C. GOODSON
Arkansas Bar Number 90018
MATT KEIL
Arkansas Bar Number 86099
KEIL & GOODSON
611 Pecan Street
P.O. Box 618
Texarkana, Arkansas 755504
Telephone: 870.772.4113
Facsimile: 870.773.2967

NIX, PATTERSON & ROACH, LLP
3600 N. Capitol of Texas Highway
Bldg. B, Suite 350
Austin TX 78746
Telephone: 512.328.5333
Facsimile: 512.328.5332

BRAD E. SEIDEL
Arkansas Bar No. 2007122

WRIGHT LINDSEY & JENNINGS L.L.P.
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
Telephone: 501.371.0808
Facsimile: 501.376.9442

MICHAEL D. BARNES
Arkansas Bar No. 88071

LAW OFFICE OF
GEORGE L. MCWILLIAMS, P.C.
Post Office Box 58
Texarkana, Texas- Arkansas 75504
Telephone:  870.772.2055
Facsimile:  870.772.0513

GEORGE L. MCWILLIAMS
Arkansas Bar No. 68078

40